## Adams v. Littell's Adm'rs.

April 25, 1941.

F. A. Harrison for appellant.

G. L. Tucker and L. M. Ackman for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

This appeal involves a matter of allowance for legal services claimed to have been rendered by appellant to the administrator of the estate of Ernest Littell, who died intestate in June, 1936, leaving an estate worth approximately $40,000, of which $26,000 was personal property.

Hade Littell, a son, qualified as administrator and acted until March 14, 1937, when he died; thereafter appellees, Chipman and Mullins, were appointed. Later, and in May, 1937, counsel, other than appellant, filed a final settlement of Hade Littell's accounts, showing receipts of about $26,000 in personal property, of which there had been partially distributed to some of the heirs, and in allowed claims, about $4,300. The balance was turned over to the administrators de bonis non, who filed partial settlement showing distribution, except to the extent of $3,000.

Following this settlement appellant filed exception on the ground that it made no allowance to him for services rendered to the original administrator; his exception, which took the form of a pleading, was verified with accompanying affidavit. Certain dilatory pleas were overruled, answer filed, and the county court allowed appellant $750, the amount claimed. Thereafter appellees appealed to the circuit court.

In the circuit court the case was by agreement transferred to the equity docket, and the chancellor taking up the matter on pleadings, exhibits and proof, allowed appellant $200 for the services rendered, and the matter is here solely on the factual question whether or not the services rendered by appellant were worth $550 more than allowed by the chancellor. Appellant contends: That shortly after Ernest Littell's death the son discussed with appellant his proposed appointment as administrator, and after his qualification in July, 1936,

employed him to represent him in the affairs of the estate; he accepted and served until an undisclosed date, certainly not longer than March 13, 1937; perhaps not later than August of 1936, as is claimed by appellees, when other counsel claims he was employed, which assertion is not denied.

However, proof shows that appellant had rendered some service. There had been and was a controversy between decedent and a neighbor as to the right to the use of a passway over Wolfe's farm, decedent claiming the easement by long usage. He advised with Littell; went to view the passway, and discussed the matter of facts with several witnesses, finally advising Littell as to his rights. Appellant never instituted suit involving the passway. Later such suit was instituted by another attorney, and for which service he was paid a fee by the administrators de bonis non.

It was also claimed by appellants that prior to the death of Ernest Littell, he had frequently consulted with him about having his will written; appellant advised him as to matters pertaining thereto; as to its purpose and effect, but Littell died without having made a will. This, and the service mentioned, supra, were services to Ernest Littell, and not to the administrator.

His claim for services rendered to the administrator consisted of advising him in regard to and making partial distribution to some of the heirs who were pressing for money, and payment of some few claims. In all there was distributed not more than $3,500, for which checks were written by appellant and receipts taken.

Hade Littell was living on a tract of about 100 acres of land owned by Ernest at his death, and the former, without deed or other writing showing respective rights, had built a house on a portion of the land. The matter of respective rights considerably disturbed the son, administrator, and confused all parties. Appellant, following several conferences, succeeded in obtaining a contract, later a deed which, if executed, is not shown to have been delivered or accepted. This controversy was closed by counsel who succeeded appellant after the appointment of administrators de bonis non. This did not constitute any duties of the administrator. Charges should have been made against Hade, or him and the heirs.

During the summer of 1936 there was considerable drought, and the then administrator sought advice as to what care or disposition should be made of live stock; consultations were had by appellant and parties concerned, and with the county judge. It is not shown how this matter was terminated. This was a proper charge against the estate. There were also occasional discussions as to repairs on the property occupied by the widow as her home, which led to the conclusion that minor repairs should be made. There were discussions as to the widow's rights; whether she would accept her one-third interest in the property, or in value. Nothing definite came of this until later.

These, and perhaps other matters, were discussed until some time prior to March, 1937, when the heirs became dissatisfied with the administrator, due perhaps to the fact that he was not paying off, though time for settlement had not arrived. The proof shows that the matter of administration was worrying Hade Littell to a considerable extent, and he no doubt was worrying appellant. Appellant noticed a decided change in his mentality; so did the county judge and some of the heirs. The matter came to a head when certain of the heirs approached appellant and suggested that he request the removal of Hade Littell. He demurred, but upon their insistence prepared and presented to the county court demand and notice for Hade's removal. It may be well to note at this point that appellant expressed some doubt as to whether or not he was then representing Hade, since he had not seen him or had conferences with him for some time. This service did not constitute a charge against the estate.

From this point on it is not difficult to determine that appellant was not representing the estate in procuring the appointment of a successor. The motion for removal was made about March 13, and notice probably served on the same day. Whether correctly stated or not, the newspapers of a few days following, reported Hade Littell's suicide.

Thereafter services rendered by appellant, as he claims, for the best interest of the estate, consisted in his appearing with some of the heirs in attempting to procure appointment of a successor. Chipman was a "prospect;" some of the heirs were insisting on Mullins. One attorney was insisting on Mullins, another on Chip-

man. The county court finally appointed both. This did not please some of the heirs, who insisted on appellant further objecting to the appointing order being entered. He declined.

Appellant testified in his own behalf, as above recited, and also introduced the county judge who had made the initial allowance of $750; the latter's testimony is not of the most satisfactory character. A neighbor of Hade Littell's only undertook to tell of meetings and conferences between appellant and the first personal representative, but for obvious reasons does not undertake to fix value. A local lawyer, asked an inadequate hypothetical question, said the services rendered were worth from $750 to $1,000. It is admitted by appellant that following the appointment of Chipman and Mullins, who employed Tucker and Webb to represent them, he rendered no service.

The administrators de bonis non were apparently appointed soon after March 14, 1937. Ackman, claiming to act for the former administrator, and since August, 1936, filed final settlement on May 6, 1937, and on the same day, or thereabouts, the joint representatives filed a partial settlement, in which attorneys' fees were allowed.

Tucker in testifying says that after the appointment of Mullins and Chipman, he and Ackman spent two months in going over bank accounts and checks, preparing for the partial settlement. Tucker contacted the heirs and finally got the agreement as to the settlement of the matter of advancements to various heirs of Ernest Littell, and closed up the matter of dispute between Mrs. Hade Littell, sole devisee of her husband, and the heirs of Ernest Littell in regard to the disposition of the 100 acres, and the part of the Ernest Littell land upon which Hade had built the residence.

The court in rendering judgment remarked that he was familiar with the entire case. The question was one purely of fact. Several of the items for which claim was filed, and payment sought, consisted of such as were not properly chargeable to the estate of Ernest Littell. We conclude that the chancellor was correct in declining to allow more than the sum fixed in the judgment.

Judgment affirmed.